IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | | |
|---|---|---|
| METALMARK NORTHWEST, LLC, an Oregon limited liability company, and VALLEY BRONZE OF OREGON, INC., an Oregon corporation, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 04-682-KI |
| vs. | ) ) | OPINION AND ORDER |
| LAURA JANELLE STEWART, et al., | ) ) | |
| Defendants. | ) ) | |

Robert L. Aldisert
Stephanie K. Hines
Perkins Coie LLP
1120 N. W. Couch Street, Tenth Floor
Portland, Oregon  97209-4128

    Attorneys for Plaintiffs

Page 1 - OPINION AND ORDER

David J. Hollander
Hollander, Lebenbaum & Gannicott
1500 S. W. First Avenue, Suite 700
Portland, Oregon  97201

Herman M. Braude
Michael A. Lewis
Braude & Margulies P. C.
888 17th Street N. W., Suite 500
Washington, D. C.  20006

      Attorneys for Defendants

KING, Judge:

      The parties in these related actions are involved in the bronze casting and ornamental

metal fabrication business.  Defendants allegedly conspired to deprive plaintiffs of the $8.4

million contract for an ornamental metal and bronze door at the United States Capital Visitor

Center ("CVC").

      On September 2, 2004, in Metalmark I (CV04-682-KI) I sent plaintiff Metalmark

Northwest, LLC ("Metalmark"), plaintiff Valley Bronze of Oregon, Inc. ("Valley Bronze"), and

defendant Janelle Stewart to arbitration and stayed the claims against the other defendants.  I also

intended to rule on the requests for equitable relief after the arbitration determined the merits of

the underlying claims.

      The parties selected William Crow as the arbitrator.  On September 28, 2005, Crow filed

an interim arbitration award that awarded Metalmark $1.7 million, with Janelle Stewart and

Stewart Springs Ltd. jointly and severally liable for the award.  Stewart Springs was not a party

in Metalmark I.  Crow found that this award was sufficient to compensate the damages, if any,

Page 2 - OPINION AND ORDER

suffered by Valley Bronze. Crow further found that there was no evidence to support the counterclaim alleged by Janelle Stewart and Stewart Springs. On December 7, 2005, Crow filed the final award which also included an award of attorney fees of $561,927 and costs of $112,010.68.

Plaintiffs then filed an action in Multnomah County Circuit Court against Stewart Springs and Janelle Stewart to confirm the arbitration award. Defendants removed that action to this court (Metalmark II, CV05-1920-KI) based on diversity jurisdiction.

Plaintiffs moved to remand Metalmark II, contending that diversity jurisdiction did not exist. The situation is atypical because the Stewarts moved Stewart Springs from Oregon to Virginia in July 2005. On my prompting, the parties discussed the situation and reached a stipulation that this court has diversity jurisdiction in Metalmark II. Based on that stipulation, plaintiffs withdrew the motion to remand.

The issues now before the court are whether to confirm or vacate the arbitration award, whether to transfer the cases to the Washington, D.C. area, and whether this court has personal jurisdiction over some of the defendants. For the convenience of all, I will consolidate Metalmark I and Metalmark II for all purposes and address the pending motions.

## DISCUSSION

I.    Motion to Dismiss or Transfer

Defendants first seek to dismiss the action, contending that the District of Columbia is the only proper venue.

The venue statute states:

> (a)  A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a).

Janelle Stewart was living in Oregon when she began to breach her fiduciary and contractual duties.  Metalmark and Valley Bronze are both Oregon companies with principal places of business in Joseph, Oregon.  Even if the conspiratorial acts took place on the East coast, the injury would be felt in Oregon.  See Myers v. Bennett Law Offices, 238 F.3d 1068, 1076 (9th Cir. 2001) (the locus of injury is a relevant factor in a tort action).  Consequently, I conclude that a substantial part of the events giving rise to the claims occurred in Oregon, making venue proper in this district.

Defendants also seek to transfer the action under 28 U.S.C. § 1404(a) to the District of Columbia for convenience factors.  Defendants contend that almost all witnesses live in the Washington, D.C. area

28 U.S.C. § 1404(a) provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

Factors to be weighed in a motion to transfer venue under the statute include:  (1) the location where relevant agreements were negotiated and executed; (2) the state that is most

Page 4 - OPINION AND ORDER

familiar with the governing law; (3) plaintiff's choice of forum; (4) the parties' contacts with the forum; (5) contacts relating to plaintiff's cause of action in the forum; (6) differences in the cost of litigation in the two forums; (7) availability of compulsory process to compel the attendance of unwilling non-party witnesses; and (8) the ease of access to sources of proof. <u>Jones v. GNC Franchising, Inc.</u>, 211 F.3d 495, 498-99 (9th Cir.), <u>cert. denied</u>, 121 S. Ct. 307 ( 2000). The presence of a forum selection clause is a significant factor, as well as any public policy of the forum state. <u>Id.</u> at 499.

The operating agreement was negotiated and executed in Oregon, prior to the Stewarts return to Virginia. It is not clear to me what law will apply. The parties disagree but the briefing is not adequate to decide the issue yet. Plaintiff's choice of forum is Oregon. Some of defendants have such limited contacts with Oregon that they contend this court does not have personal jurisdiction over them. Other than the Stewarts, no defendant has any contacts with Oregon other than related to this action. The cost factor is neutral. It will be more expensive for plaintiffs to litigate in the East and more expensive for defendants to litigate in Oregon. Most discovery took place prior to the arbitration. Thus, the factors on the availability of compulsory process and ease of access to sources of proof primarily relate to trial. Each side suggests a few nonparty witnesses that they could not compel to testify at trial in the other forum, thus making those factors neutral.

I am also cognizant of the fact that the arbitration took place in Oregon, apparently without difficulty. That weighs against defendants' argument of inconvenience to remain here for the remainder of the case.

After weighing all the factors, I conclude that nothing outweighs plaintiffs' choice of forum in Oregon. Accordingly, I deny the motion to transfer under § 1404(a).

Page 5 - OPINION AND ORDER

II.    <u>Motions to Confirm or Vacate the Arbitration Award</u>

Defendants move to vacate the arbitration award for three reasons.

Under the Federal Arbitration Act, 9 U.S.C. § 1 <u>et seq.</u>, the court may vacate an arbitration award:

> (1)  where the award was procured by corruption, fraud, or undue means;
>
> (2)  where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).

A.    <u>Evident Partiality</u>

First, defendants contend that there is "evident partiality" based on some associations between the arbitrator and plaintiffs' attorneys.  Metalmark contends that these associations are too remote to be a concern, particularly because they are between the arbitrator and plaintiffs' counsel rather than with plaintiffs themselves.

In a nondisclosure case, evident partiality is present "when undisclosed facts show a reasonable impression of partiality."  <u>Schmitz v. Zilveti</u>, 20 F.3d 1043, 1046 (9th Cir. 1994) (internal citation omitted) (arbitrator had evident partiality when he failed to disclose that his firm had represented one of the party's parent company).  There is no requirement of proof of actual bias in a nondisclosure case.  <u>Id.</u>

Page 6 - OPINION AND ORDER

Plaintiffs provide more specifics of the associations. Paul Fortino, an attorney with plaintiffs' law firm Perkins Coie, spent 14 hours on this case assisting with a mock arbitration. Fortino and arbitrator Crow represented separate parties in litigation in Oregon state courts. James Gidley, of Perkins Coie, also assisted with the mock arbitration for ten hours. Gidley has represented defendants in asbestos exposure cases which had multiple defendants and as many as 30 other attorneys. Gidley is unaware whom Crow represented in those cases but Gidley and Crow did not jointly defend clients. Robert Aldisert of Perkins Coie, plaintiff's lead counsel in this action, also worked on the asbestos cases but did not jointly defend any party with Crow. Gidley was local counsel with minimal duties representing a defendant in two multiple-defendant cases concerning latex gloves and two multiple-defendant cases concerning vaccines. Gidley is unaware whom Crow represented but is sure that they did not represent the same client. Aldisert represented a third-party defendant in a commercial dispute involving a bankruptcy in which Crow represented another third-party defendant. Aldisert did not interact with Crow on that case at all.

The arbitrator did not disclose any of these relationships.

Many of the cases on which defendants rely do not address the subject of relationships between an arbitrator and counsel for one of the parties to the arbitration. I do not find cases discussing the relationship between the arbitrator and a party applicable here. Two of defendants' cases are closer to the mark. In <u>William C. Vick Construction Co. v. North Carolina Farm Bureau Federation</u>, 472 S.E.2d 346, 349 (N.C. Ct. App. 1996), the court found evident partiality for the failure to disclose significant business relationships and friendships between the arbitrator and a partner in the law firm of the winning party's counsel. The relationships included a close personal

friendship between the arbitrator and the partner that included the families traveling together, exchanging gifts at the birth of children, and children playing together. Further, the partner had represented the arbitrator in a criminal case brought against him. Id. at 348-49. The extent of the contacts in William C. Vick is far beyond those between Crow and Perkins Coie. In particular, the criminal representation in William C. Vick causes the appearance of partiality because the arbitrator's ruling could be a way for the arbitrator to thank his former counsel.

In University Commons-Urbana v. Universal Constructors, Inc., 304 F.3d 1331 (11th Cir. 2002), the court also analyzed contacts between the arbitrator and the law firm representing one of the parties. The court concluded that *previous* contacts between the arbitrator and counsel for one of the parties does not suggest evident partiality but,

> [o]n the other hand, a reasonable person might envision a potential conflict if an arbitrator, *concurrently with the arbitration*, partakes in a proceeding in which counsel for one of the parties to the arbitration is also participating. . . . Whether he acts as co-counsel or opposing counsel in a mediation, litigation or other arbitration, the arbitrator could seem biased, and his ruling in the arbitration could be seen as a way to curry favor in the other matter.

Id. at 1340 (emphasis in the original).

Here, none of the parallel representations were current with the arbitration. Thus, there was no ability to curry favor or appear biased. I conclude that the undisclosed facts do not show a reasonable impression of partiality. Accordingly, there is no evident partiality on which to base a vacatur of the arbitration award.

B.    Manifest Disregard of the Law

Second, defendants contend that the arbitrator failed to follow the governing law, resulting in manifest disregard of the law justifying vacatur of the award. Oregon law governed this dispute

under the Operating Agreement.  Defendants contend that the arbitrator failed to adhere to Oregon

law when he decided to enforce the noncompete covenant.  Metalmark argues that defendants just

disagree with the arbitrator and a disagreement, or even a mistake on the part of the arbitrator, is

insufficient to vacate the award.

"Manifest disregard of the law means something more than just an error in the law or a

failure on the part of the arbitrators to understand or apply the law.  It must be clear from the

record that the arbitrators recognized the applicable law and then ignored it.  Michigan Mutual

Insurance Co. v. Unigard Security Insurance Co., 44 F.3d 826, 832 (9th Cir. 1995) (internal

quotation and citation omitted) (arbitration award was not manifest disregard of the law even

though the winning party was put in a better position than it would have been in if the arbitrators

awarded the requested contract rescission).

Concerning the noncompete covenant, the arbitrator stated:

> Stewart Springs, acting through its owner and president, Janelle Stewart,
> breached its contractual and fiduciary duties to Metalmark, and Janelle Stewart
> breached the terms of Article 9.5 of the Operating Agreement which is designed to
> limit the ability of the principals of the two members to compete in miscellaneous
> and ornamental fabrication.  There is no need to determine whether the
> noncompete agreement is too broad in geographical scope or for too long a period
> of time.  The competition from Janelle Stewart commenced even before the
> unilateral withdrawal of the Metalmark bid and was in the precise geographical
> area that the members of Metalmark expected to perform Metalmark's primary
> business operations, at least for the foreseeable future.

Hollander Decl. Ex. 3.

To be enforceable, a covenant not to compete must be:  (1) partial or restricted in its

operation in respect either to time or place; (2) supported by consideration; and (3) reasonable,

namely, "it should afford only a fair protection to the interests of the party in whose favor it is

made, and must not be so large in its operation as to interfere with the interests of the public."

North Pacific Lumber Co. v. Moore, 275 Or. 359, 364, 551 P.2d 431 (1976).

The arbitrator addressed the first factor by noting that the prohibited competition began prior to the withdrawal of the bid and in the area in which Metalmark was competing. Any opinion on the time or place restrictions beyond this analysis would have been dicta. I agree with plaintiffs that the consideration comes from the fact that the covenants are reciprocal. Defendants have not persuaded me that this factor was hotly contested or required an express statement in the award. I further find that the third factor, that the covenant affords only a fair protection to the interests of the parties, is indirectly addressed in the last half of the quoted paragraph. Although defendants disagree with the arbitrator's analysis, I cannot say that the arbitrator ignored the applicable law. Accordingly, I will not vacate the award because of a manifest disregard of the law.

C.    Exceeding Arbitrator's Authority

Third, defendants contend that the arbitrator exceeded his authority by failing to render a decision in accordance with the arbitration agreement, which requires "a statement specifying in reasonable detail the basis for and computation of the amount of the award, if any." Hollander Decl. Ex. 1 at 9, ¶ 12.2. The arbitrator dismissed the counterclaim with a single sentence stating there was no evidence to support it.

Although this is brief, the arbitrator cannot discuss the sufficiency of the evidence if there is no evidence at all. The statement complied with the arbitration agreement.

Defendants also believe that the arbitrator did not give enough explanation of the $1.7 million figure and ignored the Operating Agreement's requirement that all income be split

Page 10 - OPINION AND ORDER

between Metalmark's two equal owners, Stewart Springs and Valley Bronze.  Metalmark

generally contends that enough explanation was given and that the arbitrator had the latitude to

specify this amount and cut Stewart Springs out of its share.

When the arbitrator did not reduce the award based on the requirement to split income, he

stated that because of their actions, Stewart Springs and Janelle Stewart are not entitled to share in

the damages suffered by Metalmark.  The arbitrator applied a corollary to the doctrine of unclean

hands.  See Welsh v. Case, 180 Or. App. 370, 385, 43 P.3d 445 (2002) (unclean hands is an

equitable doctrine in which the court denies relief to a party that is guilty of improper conduct in

the same transaction, no matter how improperly the other party behaved).  This is an adequate

explanation for the refusal to split income.

Concerning the amount of the award, the decision states:

As to damages, it is clear that whatever Janelle Stewart might have
expected in the way of profits, those expectations would not have been fully
realized.  Although she testified that she had bid on some 30 to 40 different
projects, it is clear that she made substantial errors in submitting the bid in
question.  There is again significant dispute as to the effect of those errors and the
effect on the profitableness of the project.

As to the amount of damages, Janelle Stewart and others testified that
Metalmark expected to make a profit when its original bid was submitted for the
project.  When informed that the bid was "low by half," a revised bid increasing
the bid amount by $1,700,000 was submitted.  It is this revised bid that the parties
reasonably expected would result in an award of the contract.

I find that Metalmark was damaged in an amount not less than the amount
of the increased bid of $1,700,000 by reason of the breaches by both Stewart
Springs and Janelle Stewart individually . . . .

Hollander Decl. Ex. 3 at 4.

It appears that the arbitrator concluded that the bid was raised to provide a profit to Metalmark.  As fact finder, it is within his prerogative to come to this conclusion.  He gave reasonable detail in explaining the basis for the award.

I find that the arbitrator did not exceed his authority in any of the ways argued by defendants.

In summary, there is no basis to vacate the arbitration award.  I grant summary judgment confirming it.

III.   Motion to Dismiss for Lack of Personal Jurisdiction

Several defendants move to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2):  Highland Ornamental Ironworks, Inc. ("Highland"), Superior Iron Works, Inc. ("Superior"), Milestone Tarant, LLC ("Milestone"), F. Leith Boggess, and Richard T. Ross.

As a preliminary issue, plaintiffs argue that Milestone, Highland, and Boggess waived this defense by failing to raise it in the Motion to Dismiss or Abate filed in 2004.  Based on the arbitration agreement, defendants contended in that motion that this court lacked subject matter jurisdiction under Rule 12(b)(1).  A defense of lack of personal jurisdiction is waived under Rule 12(h) if it is omitted from a motion to dismiss based on other Rule 12 defenses.  Defendants contend that the original motion was actually a motion to compel arbitration.

I am unaware of any cases directly on point but found one that is instructive.  In American Association of Naturopathic Physicians v. Hayhurst, 227 F.3d 1104 (9th Cir. 2000), cert. denied, 532 U.S. 1008 (2001), defendant filed a motion to vacate and set aside a default judgment.  Although the motion was filed under Rule 55(c), it asserted the defense of improper service under

Page 12 - OPINION AND ORDER

Rule 12(b)(5) but did not assert the defense of lack of personal jurisdiction under Rule 12(b)(2).

The court held that defendant waived his right to challenge personal jurisdiction in a later motion.

Id. at 1107-08.

> The essence of Rule 12 – embodied in the combined language of 12(g) and 12(h) – is that a party "who by motion invites the court to pass upon a threshold defense should bring forward all the specified defenses [personal jurisdiction, improper venue, insufficient process, or insufficient service] he then has and thus allow the court to do a reasonably complete job." Fed. R. Civ. P. 12 advisory committee's note, 1966 Amendment, subdivision (h). Thus, if [defendant] raised *any* Rule 12 defenses in his first filing to the court, he was obliged to raise all of those specified in Rule 12(h).
>
> The fact that [defendant's] first filing was not dubbed a "Rule 12" motion is of no significance. The rule applies with equal effect no matter what is the title of the pleading.

Id. at 1107 (emphasis in the original).

If I apply the teaching that the title of the motion is unimportant, it is clear that defendants did not waive their personal jurisdiction defense. The first motion only discussed arbitration and brought up none of the Rule 12 defenses. Thus, I will turn to the merits of the argument.

A.    Applicable Law

The plaintiff bears the burden of establishing that the court has personal jurisdiction over the defendant. Harris Rutsky & Co. Insurance Services, Inc. v. Bell & Clements, 328 F.3d 1122, 1129 (9th Cir. 2003). If no evidentiary hearing is held, a plaintiff can withstand a motion to dismiss by making a prima facie showing of jurisdictional facts which, if true, support jurisdiction over the defendant. Allegations in the complaint must be taken as true and conflicts between the facts must be resolved in the plaintiff's favor for purposes of deciding whether a prima facie case for personal jurisdiction exists. Id.

Page 13 - OPINION AND ORDER

The jurisdictional reach of the federal court over defendants in a diversity action is determined by the law of the forum state. Oregon extends jurisdiction to the outer limits permitted by the state or federal constitutions. ORCP 4L. Thus, I can turn to a federal due process analysis. Mattel, Inc. v. Greiner and Hausser GMBH, 354 F.3d 857, 863 (9th Cir. 2003).

Federal due process requires that a nonresident defendant has minimum contacts with the forum state such that the exercise of personal jurisdiction does not offend "traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). The constitutional due process test may be satisfied by a finding of either general or specific jurisdiction. Plaintiffs here contend that the court has specific jurisdiction over defendants.

When general jurisdiction is inappropriate, the Ninth Circuit has recognized application of a three-part test to determine whether specific jurisdiction exists:

> (1) the defendant has performed some act or consummated some transaction within the forum or otherwise purposefully availed himself of the privileges of conducting activities in the forum, (2) the claim arises out of or results from the defendants' forum-related activities, and (3) the exercise of jurisdiction is reasonable.

Mattel, 354 F.3d at 863.

The plaintiff has the burden of satisfying the first two prongs of the test or personal jurisdiction is not established in the forum state. If the plaintiff is successful, the burden shifts to the defendant to present a compelling case that the exercise of jurisdiction would not be reasonable. Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004).

The first element ensures that a "defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S. Ct. 559 (1980).

> We often use the phrase "purposeful availment," in shorthand fashion, to include both purposeful availment and purposeful direction, but availment and direction are, in fact, two distinct concepts. A purposeful availment analysis is most often used in suits sounding in contract. A purposeful direction analysis, on the other hand, is most often used in suits sounding in tort.
>
> A showing that a defendant purposefully availed himself of the privilege of doing business in a forum state typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there. By taking such actions, a defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws. In return for these benefits and protections, a defendant must – as a quid pro quo – submit to the burdens of litigation in that forum.
>
> A showing that a defendant purposefully directed his conduct toward a forum state, by contrast, usually consists of evidence of the defendant's actions outside the forum state that are directed at the forum, such as the distribution in the forum state of goods originating elsewhere.

Schwarzenegger, 374 F.3d at 802-03 (internal quotation and citation omitted) (express aiming at California not established when Ohio defendant placed advertisements using plaintiff's likeness in Ohio newspapers).

Purposeful direction is evaluated under the three-part effects test. To meet the effects test, the defendant must have (1) committed an intentional act, which was (2) expressly aimed at the forum state, and (3) caused harm that the defendant knows is likely to be suffered in the forum state. Id. at 803. See Bancroft & Masters, Inc. v. Augusta National, Inc., 223 F.3d 1082, 1087-88 (9th Cir. 2000) (Georgia defendant was found to have purposefully availed itself of the right to conduct activities in California when it sent a letter to the registrar of Internet domain names,

Page 15 - OPINION AND ORDER

located in Virginia, challenging the domain name of a California company and triggering the

dispute resolution policy); <u>Gordy v. Daily News, L.P.</u>, 95 F.3d 829, 833 (9th Cir. 1996) (New

York newspaper and its columnist brought into California court where the defamed plaintiff lived

and where the newspaper had a small but steady circulation); <u>Metropolitan Life Insurance Co. v.</u>

<u>Neaves</u>, 912 F.2d 1062 (9th Cir. 1990) (Alabama resident was brought into a California court on

the basis of a letter she sent to an insurance company in California stating that she was entitled to

an insurance payment actually belonging to a California resident).

     The Ninth Circuit uses a "but for" test to determine whether a particular claim arises out of

forum-related activities. <u>Mattel</u>, 354 F.3d at 864 (but for defendant's contacts with the forum,

would plaintiff's claims against defendant have arisen?). The focus is a broad one, analyzing

whether the entire course of events was made possible by defendant's contacts in the forum state.

     Seven factors are relevant to the determination of the reasonableness of the exercise of

jurisdiction:

> 1) the extent of the defendant's purposeful interjection into the forum state's
> affairs; 2) the burden on the defendant of defending in the forum; 3) the extent of
> conflict with the sovereignty of the defendants' state; 4) the forum state's interest
> in adjudicating the dispute; 5) the most efficient judicial resolution of the dispute;
> 6) the importance of the forum to the plaintiff's interest  in convenient and
> effective relief; and 7) the existence of an alternative forum.

<u>Mattel</u>, 354 F.3d at 866-67. No factor is dispositive; the court must balance all seven. The

burden is on the party seeking to defeat personal jurisdiction to present a "compelling case" that

jurisdiction would be unreasonable. <u>Id.</u> at 866.

     Plaintiffs primarily make their arguments based on this traditional analysis. In a brief

footnote, plaintiffs also contend that jurisdiction is proper under the conspiracy theory doctrine as

outlined in Geo-Culture, Inc. v. Siam Investment Management, 147 Or. App. 536, 936 P.2d 1063 (1997), but neither adopted nor rejected by that court. The briefing is not adequate for me to address the conspiracy argument. I will proceed under the traditional analysis.

      B.     Boggess

      Boggess, a resident of Virginia, is Janelle Stewart's father. His business interests are in the metropolitan District of Columbia area. Boggess traveled to Oregon four times. The first two trips were mainly to visit his children and their families, the third trip was to attend a daughter's wedding. The fourth trip was to testify in the arbitration hearing.

      In February or March 2002, Jackman told Janelle Stewart that his bond application for Metalmark had been rejected. Janelle Stewart called Boggess to tell him that she was thinking about bidding a job for the CVC. Boggess checked with his partner to confirm that Superior was not going to also bid the job. Boggess offered to help Janelle Stewart with the bond. Boggess contacted his bonding company's agent in Virginia and assisted Metalmark in obtaining the necessary bonding by pledging his own personal assets as collateral. Boggess was in the District of Columbia area when this all took place.

      During a family visit trip in early 2003, Boggess met with David Jackman, then President of Valley Bronze, to discuss a potential business arrangement in which Boggess would help Janelle Stewart invest in Valley Bronze or form a new company with Jackman. The discussions with Jackman ceased after Boggess left Oregon.

      Boggess advised Janelle Stewart to amend the Metalmark Operating Agreement to drop the non-compete clause. Boggess also advised her about the possibility of forming a company under which she could pursue the CVC bid with partners other than Valley Bronze. These

conversations were during telephone calls with Boggess in Virginia and Janelle Stewart in

Oregon. Boggess also put Richard Ross in touch with Janelle Stewart, when she was still living in

Oregon, to pursue the CVC job.

Metalmark intended to perform its work for the CVC project in Oregon after building an

additional facility here and hiring a crew of Oregon employees. After fabrication, Metalmark

would have shipped the components to the District of Columbia for installation.

Under Schwarzenegger, the first prong of purposeful availment will be analyzed in this

tort case using the effects test for purposeful direction. Boggess committed intentional acts when

he advised Janelle Stewart to get out of the non-compete clause and form a company to compete

against Metalmark on the CVC bid. These acts were also expressly aimed at Oregon because

Boggess was talking to Janelle Stewart when she was in Oregon. Further, Boggess was fully

aware of Metalmark and knew that harm would be suffered in Oregon. I conclude that Boggess

purposefully directed his conduct toward Oregon.

Plaintiffs' claims also arise, at least in part, out of Boggess' phone calls to his daughter in

Oregon.

The burden then shifts to Boggess to present a compelling case that the exercise of

jurisdiction would not be reasonable. Although Boggess has sufficient purposeful interjection

into Oregon's affairs to expect to be haled into court here, the contacts with Oregon are minimal

but the damage felt in Oregon is extensive. Although defendants are concerned about the burden

of defending in Oregon, they have already extensively litigated here in the arbitration. I give little

weight to that factor. I am unaware of any conflict with the sovereignty of Virginia. Virginia's

interest in adjudicating this dispute is equal to that of Oregon – an Oregon company was damaged

and a Virginia resident may be liable for damages.  Most witnesses are in the District of Columbia

area, making that a more efficient location for resolution, although it is more convenient to

plaintiffs to litigate in Oregon.  I do not fully understand which precise jurisdiction would be an

alternative forum – Virginia, the District of Columbia, or another jurisdiction – so I consider that

factor neutral.

Weighing all of these factors, Boggess has not presented a compelling case that the

exercise of jurisdiction in Oregon is unreasonable.  Plaintiffs have made a prima facie showing of

personal jurisdiction over Boggess.  I deny his motion to dismiss.

C.    Superior

Boggess founded Superior and Gary Hall is the President.  Superior is a District of

Columbia corporation with its principal place of business in Virginia.  Superior had a $85,000

sub-contract with the Stewart Springs/Valley Bronze Joint Venture,[1] an Oregon entity, for light

structural metalwork for the World War II Memorial project.  Hall believes that the Stewart

Springs/Valley Bronze Joint Venture approached Superior because of its other work for the

general contractor.  The work was performed in District of Columbia and Virginia.  Superior has

no other business contacts with Oregon.

Janelle Stewart called Gary Essex at Superior for advice when she realized that the CVC

bid was low.  There is neither evidence nor allegations that this discussion concerned the alleged

conspiracy to take the CVC work away from Metalmark.  Allegedly Superior, through Boggess,

enlisted Ross to replace Valley Bronze as Janelle Stewart's co-venturer for the CVC project, thus

---

[1] This joint venture occurred prior to the formation of Metalmark.  There is no allegation
of wrongdoing concerning this original joint venture or the World War II Memorial project.

giving Superior a better chance of receiving a bid on a different type of CVC work.  Highland

shared its physical premises with Superior in Virginia.  Superior employees also did some work

for Highland on the CVC project.

Plaintiffs contend that Superior aimed its acts at Oregon because it knew that plaintiffs

were Oregon residents.  I am unpersuaded that Superior meets the express aiming requirement of

the effects test for purposeful direction.  I consider <u>Schwarzenegger</u> instructive:

> Here, Fred Martin's intentional act – the creation and publication of the
> Advertisement [with Schwarzenegger's unapproved likeness] – was expressly
> aimed at Ohio rather than California.  The purpose of the Advertisement was to
> entice Ohioans to buy or lease cars from Fred Martin and, in particular, to
> "terminate" their current car leases.  The Advertisement was never circulated in
> California, and Fred Martin had no reason to believe that any Californians would
> see it and pay a visit to the dealership.  Fred Martin certainly had no reason to
> believe that a Californian had a current car lease with Fred Martin that could be
> "terminated" as recommended in the Advertisement.  It may be true that Fred
> Martin's intentional act eventually caused harm to Schwarzenegger in California,
> and Fred Martin may have known that Schwarzenegger lived in California.  But
> this does not confer jurisdiction, for Fred Martin's express aim was local.  We
> therefore conclude that the Advertisement was not expressly aimed at California.

<u>Schwarzenegger</u>, 374 F.3d at 807.

Neither Superior's alleged enlistment of Ross, nor its sharing of physical premises and

employees with Highland, are aimed at Oregon, even though the harm from those acts was felt in

Oregon.  I am not going to attribute Boggess' conversation with Janelle Stewart to Superior.

There is nothing to show that he was acting as an agent of Superior at the time.  Accordingly, I

conclude that plaintiffs have not made a prima facie showing that Superior purposefully directed

its conduct toward Oregon.  I dismiss all claims alleged against Superior for lack of personal

jurisdiction.

D.    Highland

Christopher Stewart, husband of Janelle Stewart, is the founder and President of Highland, a Virginia corporation with its principal place of business in Virginia.  Highland employs Janelle Stewart as a project manager and more recently, a Vice President.  Highland gets nearly all of its work through competitive bidding for construction projects in the District of Columbia area.  In 2003, Highland performed a small job for a project at the World War II Memorial, as a subcontractor to the Stewart Springs/Valley Bronze Joint Venture, an Oregon entity.  Highland and Milestone then worked on a joint venture at the CVC.  The work was performed in Virginia and the District of Columbia.

Christopher Stewart is not objecting to personal jurisdiction here, likely because he was in business in Oregon for several years prior to moving back to Virginia.  I must conclude, however, that plaintiffs did not establish a prima facie showing that Highland expressly aimed an intentional act at Oregon that caused the harm.  The World War II Memorial work is not part of the tortious conduct.  Highland's joint venture with Milestone, although conduct which might make Highland liable, was all conduct taking place on and aimed at the east coast.  I dismiss all claims alleged against Highland for lack of personal jurisdiction.

E.    Ross and Milestone

Ross founded Milestone.  Milestone is a District of Columbia limited liability company with a principal place of business in Maryland.  Milestone's work and Ross's other business interests are in the District of Columbia area.  Ross only traveled to Oregon once to testify at the arbitration.  Janelle Stewart allegedly caused Highland to form the joint venture with Ross and

Milestone to bid on the CVC contract, with full knowledge by Ross and Milestone of Metalmark's bid.

The analysis for Ross and Milestone does not differ from Highland. The fact that Ross knew that harm would befall an Oregon company does not establish the express aiming factor, just as it did not establish the factor in <u>Schwarzenegger</u>. I dismiss all claims alleged against Ross and Milestone for lack of personal jurisdiction.

## CONCLUSION

Metalmark I (CV04-682-KI) and Metalmark II (CV05-1920-KI) are consolidated for all purposes. A procedural consolidation order will be filed separately.

The Motion to Dismiss or Transfer by all Defendants (#48 in CV04-682-KI) is denied. The Motion to Dismiss for Lack of Personal Jurisdiction by Defendants Highland Ornamental Ironworks, Inc.; Superior Iron Works, Inc.; Milestone Tarant, LLC; F. Leith Boggess; and Richard T. Ross (#50 in CV04-682-KI) is granted in part with all claims dismissed that are alleged against Highland, Superior, Milestone, and Ross. The claims against Boggess will be litigated in this court.


///


///


///


Page 22 - OPINION AND ORDER

The Motion of Janelle Stewart to Vacate the Arbitration Award (#59 in CV04-682-KI) is denied. The Motion to Remand or alternatively, to Confirm Arbitration Award (#5 in CV05-1920-KI) is withdrawn concerning the remand and granted concerning confirmation of the arbitration award. Defendants' Cross-Motion to Vacate the Arbitration Award (#9 in CV05-1920-KI) is denied.

IT IS SO ORDERED.

Dated this _____28th_____ day of February, 2006.

_____/s/ Garr M. King_____
Garr M. King
United States District Judge